Barbour, C.J.
(dissenting). There can be no doubt that the negligence of the defendants, in omitting to place a proper lookout upon the propeller, was the proximate cause of the collision. They are, therefore, chargeable in this action with the loss sustained by the plaintiff, unless the evidence produced upon the trial was sufficient to prove that there was some negligence or misconduct on the part of the persons in control of the sloop, which contributed to the accident.
The referee has not included in his findings all the facts, in *103 detail, upon which he based his conclusion that the accident was caused by the negligence of the defendants, without any contributing negligence or fault on the part of the plaintiff. The case shows, however, that testimony was given upon the trial, which was sufficient, if credited, to establish the following facts: The plaintiff’s sloop left Cold Spring, on her voyage down the river, at 2 f.m., running with a light wind on an ebb tide, and was about three hours in reaching Eoay Hook, a distance of ten miles, where, she met the flood tide, and thereupon came to anchor. At about 11 p.m., the tide having then changed, she again started upon her voyage, running with the ebb. Soon after leaving Eoay Hook she caught a good breeze, which lasted until she had run about four miles, from whence to the place of collision, being about six miles, the wind was light and inconstant, but ranging, when felt at all, from abeam to astern; and thus, with the help of the tide, she made about three miles an hour. Just previous to and at the time of the collision, the wind had so died away that she had no motion through the water, or, if any, not enough to enable her to mind her helm, although her sails were fully hoisted; but she was drifting down with the tide, at the rate of some two miles an hour. It appears from the written opinion and findings of the referee, not only that he considered those facts to be established by the testimony, but that there was no evidence credited by him which proved any contributing negligence on the part of the sloop, except such, if any, as might legitimately be inferred from the fact that she was becalmed, and drifting with the tide at the time the collision took place, instead of being anchored.
The defendants’ counsel claims that the danger of collision with other vessels navigating the river was greatly increased by permitting the sloop thus to drift with the tide; and holds that it was the duty of the master to cast anchor as soon as he found there was not sufficient wind to give her steerage-way, and that it was negligence on his part not to do so.
Although, for some two hours prior to the accident, the wind had been light and baffling, and had so died away, immediately *104 preceding the occurrence, that the sloop had but little, if any, motion through the water, yet the master had a perfect legal right to avail himself of the movement of the tide for the purpose of propulsion upon his voyage, precisely as a raft or flatboat might have done. Oases may be supposed, it is true, in which it would be gross negligence on the part of abecalmed sailing vessel thus to float with the current; such, for instance, as its near approach towards another vessel lying at anchor in the line of its progress in so drifting. In such a case, it would, undoubtedly, be the duty of the master of a vessel thus floating with the tidal current, and having no wind, to drop his anchor in time to avoid a collision. But the question presented here is quite a different one. Bor, although the receding tide, at the time of the collision, created a current in the river of about two miles an hour, the condition and position of the two vessels in relation to each other and to the water- upon which they rested, were just the same as they would have been had such vessels been placed, under the same circumstances, in the Gulf Stream of the Atlantic^ or upon water having no current whatever. As contrasted with the shore, to be sure, the sloop was floating down at the rate of two miles an hour; but, so too, was the propeller; or, rather, to that extent was she retarded by the current in her voyage from harbor to harbor, although she was making, through the water, four miles per hour. With the same rate of speed, the propeller would, in either instance, have been approaching the sloop at the rate of four miles an hour over the water, and, in each case, the sloop would be, relatively, stationary upon the water. I am, therefore, unable to see any reason for supposing that the hazard of a collision with a vessel in motion was increased at all because of the current, beyond what it would have been had both vessels occupied like positions upon dead water. Nor can I conceive that the danger of a collision with this propeller would have been diminished, had the master of the sloop brought her to an anchor at any time after the former first hove in sight; nor, indeed, how such hazard could have been lessened by any thing that it was in Ms power to do.
*105 Assuming, however, for a moment, that the risk of a collision with the approaching propeller would have been decreased had the master of the sloop anchored her, still it by no means follows that his. failure to anchor was negligence for which the plaintiff is chargeable in this action. It was not his duty to stop a voyage which was progressing at the rate of two or three miles an hour, by bringing his sloop to an anchor, merely because the hazard of a collision might be diminished thereby. But, on the contrary, it was not only his right, but a duty which he owed to his consignors and owner, to make the voyage by the use of every seaman-like means in his power; subject, however, to the condition that in doing so he should exercise the skill and caution of a prudent and competent master. The mere fact that the sloop was becalmed, and drifting with the current at the time the accident occurred, was not sufficient, therefore, to establish negligence on the part of her owner, even though the risk of collision may have been greater than it would have been had the sloop been at anchor. To establish negligence on the part of the persons having her in charge, it was essential that the evidence should show some act or omission by them, which careful, competent navigators would not have done or omitted under the same circumstances.
I am of the opinion that the judgment should be affirmed, with costs.